1  Jonas B. Jacobson (Cal. Bar No. 269912)
   jonas@dovel.com
2  Simon Franzini (Cal. Bar No. 287631)
   simon@dovel.com
3  Alex Van Dyke (Cal. Bar No. 340379)
   alex@dovel.com
4  DOVEL & LUNER, LLP
   201 Santa Monica Blvd., Suite 600
5  Santa Monica, California 90401
   Telephone: (310) 656-7066
6  Facsimile: (310) 656-7069
7

8  *Attorneys for Plaintiff David Oh,*
   *and all others similarly situated*
9

10              **UNITED STATES DISTRICT COURT**
                **NORTHERN DISTRICT OF CALIFORNIA**
11                     **SAN JOSE DIVISION**

12  DAVID OH, individually and on behalf of all
    others similarly situated,                    Case No. 5:22-cv-00866
13

14              *Plaintiff,*                       **CLASS ACTION COMPLAINT**

15              v.                                 **DEMAND FOR JURY TRIAL**

16  SUNVALLEYTEK INTERNATIONAL,
    INC.
17

18              *Defendant.*

19

20

21

22

23

24

25

26

27

28

## **Table of Contents**

I.     Introduction...................................................................................................... 1

II.    Parties............................................................................................................... 3

III.   Jurisdiction and Venue...................................................................................... 4

IV.    Facts.................................................................................................................. 4

    A.     Star ratings and customer reviews ....................................................... 4

    B.     Defendant pays for reviews .................................................................. 6

    C.     Defendant's practice of paying for reviews is unfair and deceptive, and
        misleading to reasonable consumers................................................... 11

    D.     Plaintiff was misled by Defendant's unfair and deceptive practices. .................. 12

    E.     Class Action Allegations.................................................................... 13

V.     Causes of Action ............................................................................................ 15

VI.    Jury Demand................................................................................................... 22

VII.   Prayer for Relief............................................................................................. 22

## I.      Introduction.

1.      When shopping online, consumers rely heavily on customer reviews and especially "star" ratings to make purchasing decisions.  This is especially true when shopping on websites that offer numerous competing products, such as Amazon.com.  Research shows that 93% of U.S. adults read reviews before making online purchases. [1]

2.      The reason consumers rely heavily on reviews is that consumers consider reviews posted by previous customers to be an honest reflection of product quality, as opposed to a statement made directly by the seller who produces a particular product or service.  Accordingly, consumers consider reviews to be more trustworthy than statements made directly by the seller.

3.      Peer-reviewed academic research has shown that when companies pay their customers to write reviews, this artificially inflates both the number and quality of reviews.  As a recent Harvard Business Review article explains:

> [W]hen companies pay customers to write reviews, it changes those reviews in two key ways. First, previous research has shown that providing an incentive increases the number of reviews a company is likely to receive.  Second, our recent research suggests that customers who receive an incentive are more likely to write positive reviews, regardless of their experience with the product. [2]

4.      These effects are observed whenever consumers are offered a financial incentive to write a review, regardless of whether they are asked to write a positive review, and even if they are expressly told to give their unbiased, honest assessment. [3]

---

[1] Kaitlin Woolley and Marissa A. Sharif, What Happens When Companies Pay Customers to Write Reviews?, Harvard Business Review, June 25, 2021, https://hbr.org/2021/06/what-happens-when-companies-pay-customers-to-write-reviews.

[2] *Id.*

[3] *Id.* ("Importantly, in all our experiments the incentive was offered after customers had completed their experience with the product in question. And we explicitly directed them to provide accurate, honest descriptions. Because there was no reason for incentivized customers to have had a different experience with the products than their non-incentivized counterparts, one might expect that the incentives would not influence the content of reviews — but our experiments demonstrated otherwise. Simply knowing you'll receive a reward for writing a review makes the process more enjoyable, which makes you more likely to write a positive review.")

COMPLAINT
Case No. 5:22-cv-00866

5.      Because offering customers a financial incentive to review products artificially inflates both the number and the quality of reviews for that product, this practice is unfair and deceptive: it tricks potential customers who read and rely on the reviews in question to believe that the quality of the products in question is higher than it really is.  Amazon, one of the largest and savviest online retailers in the world, is aware of this problem.  As a result, Amazon's policies expressly prohibit offering "an incentive in exchange for a review into product packaging or shipping box." [4]  And given the importance of this issue, "Amazon has a zero-tolerance policy towards any customer reviews violations." [5]

6.      Defendant makes, sells, and markets consumer electronics under several brand names, including RAVPower, HooToo, Sable, TaoTronics, VAVA, and Anjou.  Defendant's products are sold online.  Until June 2021, a large portion of Defendant's products were sold on Amazon.com.

7.      To artificially inflate both its number of reviews and its products' ratings, Defendant secretly offered financial incentives such as gift cards to prior purchasers of their products to write reviews and post them online.  These incentives were placed inside of the product packaging for Defendant's products.  An example of this practice—offering a $35 gift card in exchange for a review of a RAVPower product—is shown below:



---

[4] Customer Product Reviews Policies, Amazon,
https://sellercentral.amazon.com/gp/help/external/YRKB5RU3FS5TURN?language=en_US
[5] *Id.*

8.     Also, when a payment is disproportionately large, relative to the time it takes to write a review, it is an even stronger incentive to inflate ratings.  In the example above, Defendant offered its customers a $35 gift card for a review that would take just a few minutes to write.  And on top of this, Defendant framed the gift card payment as a prize ("LUCKY WINNERS!") to create artificially positive feelings that would translate into artificially positive reviews.

9.     Defendant's practice of offering purchasers a financial incentive to write reviews is unfair and deceptive.  By offering a financial reward, Defendant intended to encourage reviewers to give its products more reviews, higher review scores, and more positive reviews—not as a reflection of the products' true quality, but as a reflection of the fact that Defendant pays reviewers. In this way, Defendant intended to artificially inflate, and did inflate, its products' perceived quality.  Defendant thereby misled Plaintiff and other consumers into believing that Defendant's products are more highly-regarded, and of a higher quality, than they really are.  This was a material misrepresentation that Plaintiff—and other reasonable consumers—relied on when deciding to buy the products.

10.     In or around June 2021, Amazon delisted Defendant's products because of Defendant's unfair and deceptive review practices, which violated its terms of service.

11.     Had Defendant not engaged in these deceptive and unfair practices, the ratings of Defendant's products would have been lower, and the written reviews would have been less positive.  As a result, Plaintiff and other consumers would not have purchased the products or would have paid less for them.

12.     Plaintiff brings this case for himself and for millions of other consumers who purchased Defendant's products.

## II.     Parties.

13.     Plaintiff David Oh is a citizen of California (domiciled in Santa Ana).   The proposed class (identified below) includes citizens of every state within the United States.

14.     Defendant Sunvalleytek International, Inc. is a California corporation with its principal place of business in San Jose, California, and has been doing business in the State of

COMPLAINT
Case No. 5:22-cv-00866

California during all relevant times.  Directly and through its agents, Defendant has substantial contacts with, and receives substantial benefits and income from, the State of California.

**III.    Jurisdiction and Venue.**

15.    This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2).  The amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and the matter is a class action in which one or more members of the proposed class are citizens of a state different from the Defendant.

16.    The Court has personal jurisdiction over Defendant because Defendant is headquartered in California, it sold its products to consumers in California, including Plaintiff, and because Defendant is a California corporation.

17.    Venue is proper under 28 U.S.C. § 1391(b)(1) and 28 U.S.C. § 1391(d) because Defendant would be subject to personal jurisdiction in this District if this District were a separate state, given that Defendant resides in this District.

**IV.    Facts.**

**A.    Star ratings and customer reviews.**

18.    When consumer products are sold online, the product listing often includes a star rating out of five stars, as well as written reviews by past purchasers of the product.

19.    Reasonable consumers understand a star rating to measure the relative quality of a product.  Five stars means that, on average, past purchasers thought that the product was very good.  One star means that, on average, past purchasers thought that the product was very bad.

20.    Reasonable consumers believe that the star rating reflects previous purchasers' true, unbiased feelings about the product.  They do not expect that purchasers were paid or otherwise incentivized to rate a product highly. [6]

---

[6] Juan Maria Martinez Otero, Fake Reviews on Online Platforms: Perspectives from the US, UK, and EU Legislations, 1 SN Social Sciences 181 (2021) at 3-4, https://link.springer.com/content/pdf/10.1007/s43545-021-00193-8.pdf ("Reviews posted by previous customers are considered an honest reflection of product quality, as opposed to a statement made directly by the trader who produces a particular product or service.")

COMPLAINT
Case No. 5:22-cv-00866

21.     Likewise, reasonable consumers understand a written review to convey the true feelings of purchasers about the quality of the product.  They do not expect that purchasers were paid or otherwise incentivized to write positive reviews of a product. [7]

22.     The overwhelming majority of consumers—93% of U.S. adults—read customer reviews before buying products online. [8]

23.     Product ratings and reviews have a material impact on reasonable consumers' purchasing decisions.  In fact, research has found that "ratings and reviews correlate with sales ranks.  Online reviews can make or break businesses." [9]

24.     The reason that online ratings and reviews matter to consumers is because consumers believe that they come directly from previous purchasers, not from the company selling the product. Consumers place greater trust "in the opinions and personal experiences of other consumers, which contrasts with a generalized skepticism regarding the information offered by the seller herself in her advertising or institutional communication." [10]

25.     Paying purchasers to write reviews results in more reviews.  It also results in those purchasers giving the product higher review scores, and writing more positive reviews, than they otherwise would have "regardless of their experience with the product." [11]  This artificially inflates the product's rating and makes the product seem better than it really is.

26.     Paying for reviews artificially inflates product reviews and scores even if the vendor does not specifically require the reviewer to give a *high* review score in order to be compensated. Reviewers naturally write more positive reviews and give higher scores in exchange for

---

[7] *Id.*

[8] Kaitlin Woolley and Marissa A. Sharif, What Happens When Companies Pay Customers to Write Reviews?, Harvard Business Review, June 25, 2021, https://hbr.org/2021/06/what-happens-when-companies-pay-customers-to-write-reviews

[9] Juan Maria Martinez Otero, Fake Reviews on Online Platforms: Perspectives from the US, UK, and EU Legislations, 1 SN Social Sciences 181, at 5 (2021), https://link.springer.com/content/pdf/10.1007/s43545-021-00193-8.pdf at 5

[10] *Id.*

[11] Kaitlin Woolley and Marissa A. Sharif, What Happens When Companies Pay Customers to Write Reviews?, Harvard Business Review, June 25, 2021, https://hbr.org/2021/06/what-happens-when-companies-pay-customers-to-write-reviews

5

compensation, even without being specifically told to do so, and regardless of their experience with the product. Indeed, peer-reviewed research shows that paying consumers to write reviews results in artificially positive reviews even when consumers are expressly told "to provide accurate, honest descriptions" of the product in question. [12]

27.     Paying purchasers to write reviews is unfair and deceptive. It results in artificially inflated product reviews and star ratings that do not reflect past purchasers' experiences with the product. This in turn deceives consumers into purchasing products based on a false belief that the reviews and ratings reflect the true opinions of past purchasers.

28.     Consumers are harmed by paid reviews, which deceive them into purchasing products that they would not have otherwise purchased, or paying more for those products, based on an artificially inflated review score and overly positive written reviews that do not reflect past purchasers' true feelings about the product.

29.     For this reason, Amazon has a "zero-tolerance policy" toward vendors that offer a financial reward in exchange for a review of its products. [13]

30.     The Federal Trade Commission prohibits companies from offering an incentive for a review without disclosing the incentive. This is because the practice "may introduce bias or change the weight and credibility that readers give the review." [14]

**B.     Defendant pays for reviews, without disclosing this to consumers.**

31.     Defendant manufactures, distributes, markets, and sells consumer electronics. It sells these products under several brand names, including RAVPower, HooToo, Sable, TaoTronics, VAVA, and Anjou.

32.     Defendant's products are exclusively sold online, rather than at physical brick-and-mortar locations, including on websites owned by the Defendant, such as ravpower.com,

---

[12] *Id.*
[13] Customer Product Reviews Policies, Amazon, https://sellercentral.amazon.com/gp/help/external/YRKB5RU3FS5TURN?language=en_US
[14] Soliciting and Paying for Online Reviews: A Guide for Marketers, Federal Trade Commission, https://www.ftc.gov/system/files/documents/plain-language/1007a_soliciting-and-paying-for-online-reviews-508_0.pdf

1    hootoo.com, taotronics.com, and vava.com.  Until June 2021, Defendant also sold a large portion of

2    their products on Amazon.com.

3        33.    Product listings on Defendant's websites include a star rating out of five, as well as

4    written reviews by customers.  For example:





34.    Virtually every product (if not every single product) on Defendant's websites has an

average score of five out of five stars:

COMPLAINT
Case No. 5:22-cv-00866



35.     Before June 2021, Defendant's products were also sold on Amazon.com.  During this time, a large portion of Defendant's sales came from Amazon.

36.     Product listings on Amazon similarly include a star rating out of five, as well as written reviews.

37.     When Defendant's products were still listed on Amazon, its products had an unusually high number of five star ratings and positively written reviews. [15]  When reviewing customer reviews of Defendant's products on Amazon and on Defendant's website, reasonable consumers, including Plaintiff, believed that the number of reviews Defendants received, and the positive star rating and substance of those reviews, was an honest reflection of the high quality of Defendant's products.  Reasonable consumers, including Plaintiff, believed that the reviews in question were not manipulated by Defendant, including by offering incentives for reviews.  Indeed, Defendant does not disclose that it offers incentives to pay for reviews.  Moreover, offering incentives in exchange for reviews is contrary to Amazon.com's policies.  And the FTC has instructed marketers not to offer incentives in exchange for reviews without disclosing this fact, because offering incentives may introduce bias or change the weight and credibility that readers give the review. [16]

38.     The reason for Defendant's unusually high scores and positive reviews is that Defendant pays purchasers to review its products.  Defendant does this to artificially inflate the number, star rating, and quality of the reviews its products receive.  Defendant intended for consumers to rely on the reviews in deciding whether to purchase its products.

---

[15]Nicole Nguyen, Fake Reviews and Inflated Ratings are Still a Problem for Amazon, Wall Street Journal, June 13, 2021, https://www.wsj.com/articles/fake-reviews-and-inflated-ratings-are-still-a-problem-for-amazon-11623587313

[16] Soliciting and Paying for Online Reviews: A Guide for Marketers, Federal Trade Commission, https://www.ftc.gov/system/files/documents/plain-language/1007a_soliciting-and-paying-for-online-reviews-508_0.pdf

COMPLAINT
Case No. 5:22-cv-00866

39.    In June 2021, a Wall Street Journal investigation revealed that Defendant offers incentives in exchange for reviews. [17]  Defendant includes cards in some of its product packaging that read "CONGRATULATIONS! LUCKY WINNERS!" [18]  The back side of the card instructs purchasers to email the Defendant "A. Your order ID (screenshot) B. Your review URL (or screenshot)." [19]  In exchange, Defendant offers to pay the purchaser in the form of a gift card. [20]



*Example of a card included in Defendant's products, offering to pay for reviews.*

40.    Defendant offered disproportionately valuable gift cards, relative to the time it takes to write a review, to create an even stronger incentive for reviewers to inflate their ratings.  In the example above, Defendant offered its customers a $35 gift card for a review that would take just a few minutes to write.  And on top of this, Defendant framed the gift card payment as a prize ("LUCKY WINNERS!") to create artificially positive feelings that would translate into artificially positive reviews.

---

[17] Nicole Nguyen, Fake Reviews and Inflated Ratings are Still a Problem for Amazon, Wall Street Journal, June 13, 2021, https://www.wsj.com/articles/fake-reviews-and-inflated-ratings-are-still-a-problem-for-amazon-11623587313.
[18] *Id.*
[19] *Id.*
[20] *Id.*

10

41.     By paying for reviews, Defendant secures more reviews, higher average review scores, and more positive reviews, than Defendant would otherwise have received.  This is especially true because Defendant requires reviewers to send Defendant a screenshot or link to the review in question before receiving payment.  Because reviewers know that Defendant will review the star rating and content of the review, they feel pressure to give a higher rating—and say more positive things—then they otherwise might.  This effect is even more pronounced because Defendant reviews the star rating and content of the review before deciding whether to issue the incentive in question to the reviewer.  As a result, the quantity, star rating, and positive nature of the reviews for Defendant's products are a result of the fact that Defendant pays for reviews—not a reflection of the true quality of Defendant's products.

42.     Following the Wall Street Journal exposé, Amazon delisted Defendant's products from its site.  Defendant continues to sell products through its own websites, which still include artificially inflated review scores and written reviews.

**C.     Defendant's practice of paying for reviews is unfair and deceptive, and misleading to reasonable consumers.**

43.     As the academic research cited above shows and as the FTC confirms, it is unfair, deceptive, and misleading to offer financial incentives in exchange for product reviews without disclosing this fact to consumers.  This is because offering an incentive "may introduce bias or change the weight and credibility that readers give the review." [21]

44.     Reasonable consumers believe that the quantity, star rating, and contents of the reviews for Defendant's products are the product of previous purchasers' true, unbiased feelings about the products they purchased.  They do not expect that the quantity, star rating, and contents of the reviews are inflated because Defendant pays or otherwise incentivizes purchasers in exchange for giving reviews.

---

[21] Soliciting and Paying for Online Reviews: A Guide for Marketers, Federal Trade Commission, https://www.ftc.gov/system/files/documents/plain-language/1007a_soliciting-and-paying-for-online-reviews-508_0.pdf

COMPLAINT
Case No. 5:22-cv-00866

45.    Reasonable consumers rely on the fact that Defendant's ratings and reviews reflect previous purchasers' true, unbiased feelings—and specifically that Defendant does not pay for reviews—when deciding whether to buy Defendant's products.

46.    Defendant's deceptive conduct was material, i.e., a reasonable consumer would consider the products' reviews and ratings—and whether the company paid reviewers—when deciding whether to buy Defendant's products.  Reasonable consumers rely on ratings and reviews when shopping online because they reflect previous purchasers' true, unbiased opinions and are not paid for by the company.

47.    Defendant intended that consumers rely on the reviews when making their purchasing decision.  Likewise, Defendant intended that consumers believe the reviews reflect previous purchasers' true, unbiased feelings about the product, and that they were not paid for.

48.    Defendant's practice of paying purchasers to write reviews is unfair and deceptive. It results in artificially inflated product reviews and star ratings that do not reflect past purchasers' experiences with the product.  This in turn deceives consumers into purchasing Defendant's products based on a false belief that the reviews and ratings reflect the true opinions of past purchasers.

49.    Consumers are harmed by Defendant's practice of paying for reviews, which deceives them into purchasing products they would not have otherwise purchased, or to pay more for those products, based on an artificially inflated review score and overly positive written reviews that do not reflect past purchasers' true feelings about the products.

50.    There is no benefit to competition of Defendant's conduct of paying for reviews, to artificially inflate scores.  To the contrary, this hurts healthy competition, as it obscures true product quality and stops the truly superior products from prevailing in the market.  It incentivizes competitors to engage in similar misleading tactics and pay for reviews, simply to keep up.

**D.    Plaintiff was misled by Defendant's unfair and deceptive practices.**

51.    In 2019, Plaintiff purchased three products sold by Defendant on Amazon: a TaoTronics TV soundbar purchased on April 24, 2019, a TaoTronics computer speaker purchased on May 1, 2019, and a TaoTronics humidifier purchased on December 17, 2019.

12

52.     All of these products were highly-rated on Amazon.  Despite these positive reviews, however, the products were poorly made and of a low quality.  Plaintiff discovered that the products were poorly made and of a low quality after having already purchased all three products.  As an example, the TaoTronics humidifier broke a few months after Plaintiff purchased it.

53.     When deciding whether to purchase the products, Plaintiff read and relied on the products' high review scores, as well as the large number of positive customer reviews in the product listing.

54.     Plaintiff reasonably believed that the product scores and reviews were an honest, unbiased reflection of past purchasers' opinions of the quality of the product, and that those reviews were left by purchasers who decided to go to Amazon's website and leave a review on their own accord, as opposed to doing so to get a financial incentive.  Plaintiff did not know that the Defendant was paying purchasers to leave reviews.  He would not have bought the products had he known that Defendant paid for reviews and that, as a result, the product reviews for Defendant's products were inflated.

**E.     Class Action Allegations.**

55.     Plaintiff brings certain claims on behalf of the proposed class of: all persons who purchased Defendant's products in the United States during the applicable statute of limitations (the "**Nationwide Class**").

56.     For other claims, Plaintiff brings those claims on behalf of the proposed class of: all persons living in certain identified states who purchased one of Defendant's products during the applicable statute of limitations (the "**Consumer Protection Subclass**").

57.     For certain claims, in the alternative, Plaintiff brings those claims on behalf of a subclass of consumers who, like Plaintiff, purchased Defendant's products in California (the "**California Subclass**").

58.     The following people are excluded from the Class and the Subclasses: (1) any Judge or Magistrate Judge presiding over this action and the members of their family; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current employees, officers and directors; (3)

13

persons who properly execute and file a timely request for exclusion from the Class; (4) persons

whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5)

Plaintiff's counsel and Defendant's counsel, and their experts and consultants; and (6) the legal

representatives, successors, and assigns of any such excluded persons.

**Numerosity**

59.     The proposed class contains members so numerous that separate joinder of each

member of the class is impractical.  There are millions of proposed class members.

**Commonality**

60.     There are questions of law and fact common to the proposed class.  Common

questions of law and fact include, without limitation:

- Whether Defendant paid for reviews;

- Whether the practice of paying for reviews is unfair, misleading, and deceptive;

- Whether Defendant violated state consumer protection statutes; and,

- Damages needed to reasonably compensate Plaintiff and the proposed class.

**Typicality**

61.     Plaintiff's claims are typical of the proposed class.  Like the proposed class, Plaintiff

purchased products sold by the Defendant.

**Predominance and Superiority**

62.     The prosecution of separate actions by individual members of the proposed class

would create a risk of inconsistent or varying adjudication with respect to individual members,

which would establish incompatible standards for the parties opposing the class.  For example,

individual adjudication would create a risk that violation of a given state's consumer protection

statute is found for some  proposed class members, but not others.

63.     Common questions of law and fact predominate over any questions affecting only

individual members of the proposed class.  These common legal and factual questions arise from

certain central issues which do not vary from class member to class member, and which may be

determined without reference to the individual circumstances of any particular class member.  For

COMPLAINT
Case No. 5:22-cv-00866

example, a core liability question is common: whether Defendant paid for customer reviews.

64.     A class action is superior to all other available methods for the fair and efficient adjudication of this litigation because individual litigation of each claim is impractical.  It would be unduly burdensome to have individual litigation of millions of individual claims in separate lawsuits, every one of which would present the issues presented in this lawsuit.

## V.     Causes of Action

### Count I: Violations of State Consumer Protection Acts

### (on behalf of Plaintiff and the Consumer Protection Subclass)

65.     Plaintiff incorporates by reference each and every factual allegation set forth above.

66.     This count is brought on behalf of Plaintiff and the Consumer Protection Subclass for violations of the following state consumer protection statutes:

| State | Statute |
| --- | --- |
| Arizona | Ariz. Rev. Stat. §§ 44-1521, and the following. |
| Arkansas | Ark. Code § 4-88-101, and the following. |
| California | Cal. Bus. & Prof. Code § 17200, and the following; *Id.* §17500, and the following Cal. Civ. Code §1750 and the following. |
| Colorado | Colo. Rev. Stat. Ann. § 6-1-101, and the following. |
| Connecticut | Conn. Gen Stat. Ann. § 42- 110, and the following. |
| Delaware | 6 Del. Code § 2513, and the following. |
| Washington, D.C. | D.C. Code § 28-3901, and the following. |
| Georgia | Ga. Code Ann. § 10-1-390, and the following. |
| Hawaii | Haw. Rev. Stat. § 480-2, and the following. |
| Idaho | Idaho Code. Ann. § 48-601, and the following. |
| Illinois | 815 ILCS § 501/1, and the following. |
| Kansas | Kan. Stat. Ann. § 50-623, and the following. |
| Louisiana | LSA-R.S. § 51:1401, and the following. |

| Maine | Me. Rev. Stat. Ann. Tit. 5, § 207, and the following. |
|---|---|
| Maryland | Md. Code Ann. Com. Law, § 13-301, and the following. |
| Massachusetts | Mass. Gen Laws Ann. Ch. 93A, and the following. |
| Michigan | Mich. Comp. Laws Ann. § 445.901, and the following. |
| Minnesota | Minn. Stat. § 325F, and the following. |
| Montana | Mont. Code Ann. §§ 30-14-101, and the following. |
| Missouri | Mo. Rev. Stat. § 407, and the following. |
| Nebraska | Neb. Rev. St. § 59-1601, and the following. |
| Nevada | Nev. Rev. Stat. § 41.600, and the following. |
| New Hampshire | N.H. Rev. Stat. § 358-A:1, and the following. |
| New Jersey | N.J. Stat. Ann. § 56:8, and the following. |
| New Mexico | N.M. Stat. Ann. § 57-12-1, and the following. |
| New York | N.Y. Gen. Bus. Law § 349, and the following. |
| North Carolina | N.C. Gen Stat. § 75-1.1, and the following. |
| North Dakota | N.D. Cent. Code § 51-15, and the following. |
| Ohio | Ohio Rev. Code Ann. § 1345.01, and the following. |
| Oklahoma | Okla. Stat. tit. 15 § 751, and the following. |
| Oregon | Or. Rev. Stat. § 646.605, and the following. |
| Pennsylvania | 73 P.S. § 201-1, and the following. |
| Rhode Island | R.I. Gen. Laws § 6-13.1- 5.2(B), and the following. |
| South Carolina | S.C. Code Ann. § 39-5-10, and the following. |
| South Dakota | S.D. Codified Laws § 37-24-1, and the following. |

16

| Tennessee | Tenn. Code Ann. § 47-18-101, and the following. |
|---|---|
| Texas | Tex. Code Ann., Bus. & Con. § 17.41, and the following. |
| Utah | Utah Code. Ann. § 13-11-175, and the following. |
| Vermont | 9 V.S.A. § 2451, and the following. |
| Virginia | Va. Code Ann. § 59.1-199, and the following. |
| Washington | Wash. Rev. Code § 19.86.010, and the following. |
| West Virginia | W. Va. Code § 46A, and the following. |
| Wisconsin | Wis. Stat. § 100.18, and the following. |
| Wyoming | Wyo. Stat. Ann. § 40-12-101, and the following. |

67.    Each of these consumer protection statutes prohibits unfair, unconscionable, and/or deceptive acts or practices in the course of trade or commerce or in connection with the sales of goods or services to consumers.  Defendant's conduct, including paying for reviews of its products and selling products with artificially inflated reviews and ratings to Plaintiff and Class members, violates each statute's prohibitions.

68.    Defendant's deceptive conduct was a substantial factor in Plaintiff's purchase decision and the purchase decision of Class members.  Defendant's conduct was misleading to a reasonable consumer, and Plaintiff and Class members reasonably relied on Defendant's deceptively high review scores and positive reviews.

69.    Defendant intended that Plaintiff and the proposed Class members would rely on its deceptively high review scores and positive reviews, which is why it paid past purchasers to review its products.

70.    For applicable statutes, Plaintiff mailed Defendant a written notice and demand for correction on February 8, 2022.  Upon the expiration of any governing statutory notice period, Plaintiff and the class seek all available injunctive or monetary relief.

71.    Plaintiff and Subclass members were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased Defendant's products if they had

COMPLAINT
Case No. 5:22-cv-00866

known that Defendant pays for reviews, and/or (b) they overpaid for the products because they are sold at a price premium due to Defendant's unfair and deceptive conduct.  In this way, Plaintiff and the proposed Class members have suffered an ascertainable loss, in an amount to be determined at trial.

**<u>Count II: Violation of California's Unfair Competition Law (UCL)</u>**

**(on behalf of Plaintiff and the California Subclass)**

72.     Plaintiff incorporates by reference and re-alleges each and every factual allegation set forth above as though fully set forth herein.

73.     As alleged in Count I, state consumer protection laws are sufficiently similar such that Plaintiff may bring a claim on behalf of the Consumer Protection Subclass.  In the alternative, Plaintiff brings this cause of action on behalf of himself and members of the California Subclass.

74.     Defendant has violated California's Unfair Competition Law (UCL) by engaging in unlawful, fraudulent, and unfair conduct (i.e., violating each of the three prongs of the UCL).

***The Unlawful Prong***

75.     Defendant engaged in unlawful conduct by violating the CLRA, as alleged below and incorporated here.

76.     Defendant also engaged in unlawful conduct by violating the FTC Act [22] and accompanying FTC regulations [23] and guidance documents, [24] which prohibit companies from paying for reviews without disclosing that they are doing so.

***The Fraudulent Prong***

---

[22] *See* 15 U.S.C. § 45 (declaring unfair or deceptive acts or practices to be unlawful.)

[23] *See* 16 C.F.R. § 255.5 ("When there exists a connection between the endorser and the seller of the advertised product that might materially affect the weight or credibility of the endorsement (*i.e.*, the connection is not reasonably expected by the audience), such connection must be fully disclosed.")

[24] *See* FTC Guidance Document ("Note that positive consumer reviews are a type of endorsement, so such reviews can be unlawful, e.g., when they are fake *or when a material connection is not adequately disclosed.*") (emphasis added). https://www.ftc.gov/system/files/attachments/penalty-offenses-concerning-endorsements/npo_endorsement_template_letter.pdf

COMPLAINT
Case No. 5:22-cv-00866

77.     As alleged in detail above, Defendant's practice of paying for reviews was deceptive and misleading.  Defendant's practice of paying for reviews was likely to deceive, and did deceive, Plaintiff and reasonable consumers into believing that Defendant's products were of a higher quality than they really are.

**The Unfair Prong**

78.     Defendant's conduct is unfair because, by paying for reviews without disclosing this to purchasers, Defendant tricks consumers into thinking that previous purchasers of its products have a more positive view of the products than they really do.  This is unfair because, given the importance of reviews in online purchases, this leads consumers to purchase products they wouldn't otherwise purchase, or pay more for products than they otherwise would.  In addition, it is unfair because it gives Defendant's products an unfair advantage over competing products by other sellers who do not engage in this practice.  The unfairness of this practice is tethered to statutory and regulatory provisions including the FTC Act and accompanying FTC regulations and guidance documents, which prohibit companies from paying for reviews without disclosing that they are doing so because such a practice is unfair to consumers who rely on the reviews as well as to other sellers who do not engage in this practice.  It also violates the policy and spirit of the antitrust laws because it gives Defendant an unfair advantage over other sellers who do not engage in this practice and is therefore injurious to competition.

79.     Defendant's conduct is also unfair because it is unscrupulous and substantially injurious to consumers, and because it tricks consumers into thinking that prior purchasers of Defendant's products had a better experience with Defendant's products than they really did and causes them to rely on this fact to their detriment.

80.     Defendant's conduct is also unfair because the harm Defendant's conduct caused to Plaintiff and the Class greatly outweighs the public utility of Defendant's conduct.  There is no public utility to paying for product reviews in order to artificially inflate reviews and review scores.  This injury was not outweighed by countervailing benefits to consumers or competition.  Deceptive trade practices injure healthy competition and harm consumers.

81.     Plaintiff and the Class could not have reasonably avoided this injury.  As alleged above, Defendant's representations were deceptive to reasonable consumers like Plaintiff.

*  *  *

82.     For all prongs, Defendant's deceptive conduct was intended to induce reliance, and Plaintiff saw, read and reasonably relied on the product's artificially-inflated reviews and review scores when purchasing the products.  Defendant's deceptive and unfair conduct was a substantial factor in Plaintiff's purchase decision and the purchase decisions of Subclass members.

83.     In addition, classwide reliance can be inferred because Defendant's deceptive conduct was material, i.e., a reasonable consumer would consider the products' reviews and review scores important in deciding whether to buy Defendant's products.

84.     Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and Subclass members

85.     Plaintiff and Subclass members were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased Defendant's products if they had known that Defendant pays for reviews, and/or (b) they overpaid for the products because the products are sold at a price premium due to Defendant's deceptive and unfair conduct.

## Count III: Violation of California's Consumer Legal Remedies Act (CLRA)
### (on behalf of Plaintiff and the California Subclass)

86.     Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

87.     Plaintiff brings this cause of action on behalf of himself and members of the California Subclass.

88.     Plaintiff and the other members of the California Subclass are "consumers," as the term is defined by California Civil Code § 1761(d).

89.     Plaintiff, the other members of the California Subclass, and Defendant have engaged in "transactions," as that term is defined by California Civil Code § 1761(e).

90.     The conduct alleged in this Complaint constitutes unfair methods of competition and unfair and deceptive acts and practices for the purpose of the CLRA, and the conduct was

COMPLAINT
Case No. 5:22-cv-00866

undertaken by Defendant in transactions intended to result in, and which did result in, the sale of goods to consumers.

91.    As alleged more fully above, Defendant has violated the CLRA by paying for reviews in order to artificially inflate its products' review scores and attract more positive reviews than its products would otherwise have received.

92.    As a result of engaging in such conduct, Defendant has violated California Civil Code §§ 1770(a)(2), (a)(5), (a)(7), and (a)(9).

93.    Defendant's conduct was likely to deceive, and did deceive, Plaintiff and reasonable consumers.  Defendant knew, or should have known through the exercise of reasonable care, that its practice of paying for reviews was deceptive and misleading.

94.    Defendant's practice of paying for reviews was intended to induce reliance, and Plaintiff saw, read and reasonably relied on the paid reviews when purchasing Defendant's products.  Defendant's deceptive conduct was a substantial factor in Plaintiff's purchase decision and the purchase decisions of Subclass members.

95.    In addition, classwide reliance can be inferred because Defendant's practice of paying for reviews was material, i.e., a reasonable consumer believes that reviews and review scores are important in deciding whether to buy Defendant's products, and believes that the reviews and review scores are true, unbiased reflections of past purchasers' opinions of the products.  They do not believe that past purchasers were paid or otherwise incentivized by Defendant to leave reviews.

96.    Defendant's deceptive conduct was a substantial factor and proximate cause in causing damages and losses to Plaintiff and Subclass members

97.    Plaintiff and Subclass members were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased Defendant's products if they had known that Defendant pays for reviews, and/or (b) they overpaid for the products because they are sold at a price premium due to Defendant's practice of paying for reviews.

98.    Accordingly, pursuant to California Civil Code § 1780(a)(3), Plaintiff, on behalf of himself and all other members of the California Subclass, seeks injunctive relief.

21

COMPLAINT
Case No. 5:22-cv-00866

99.     CLRA § 1782 NOTICE.  On February 8, 2022, a CLRA demand letter was sent to Defendant's headquarters and California registered agent, via certified mail (return receipt requested).  This letter provided notice of Defendant's violation of the CLRA and demanded that Defendant correct the unlawful, unfair, false and/or deceptive practices alleged here.  If Defendant does not fully correct the problem for Plaintiff and for each member of the California subclass within 30 days of receipt, Plaintiff and the California subclass will seek all monetary relief allowed under the CLRA.

**Count IV: Quasi-Contract / Unjust Enrichment**

**(on behalf of Plaintiff and the Nationwide Class)**

100.     Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

101.     Plaintiff alleges this claim individually and on behalf of the Nationwide Class.

102.     As alleged in detail above, Defendant's deceptive practice of paying for reviews caused Plaintiff and the Class to purchase Defendant's products and to pay a price premium for these products.

103.     In this way, Defendant received a direct and unjust benefit, at Plaintiff's expense.

104.     Plaintiff and the Nationwide Class seek restitution.

**VI.    Jury Demand.**

105.     Plaintiff demands a jury trial on all issues so triable.

**VII.   Prayer for Relief.**

106.     Plaintiff seeks the following relief for himself and the proposed class and subclasses:

- An order certifying the asserted claims, or issues raised, as a class action;
- A judgment in favor of Plaintiff and the proposed class;
- Damages, including statutory, treble, and punitive damages where applicable;
- Restitution;
- Disgorgement, and other just equitable relief;
- Pre- and post-judgment interest;

22

COMPLAINT
Case No. 5:22-cv-00866

- An injunction prohibiting Defendant's deceptive conduct, as allowed by law;

- Reasonable attorneys' fees and costs, as allowed by law; and

- Any additional relief that the Court deems reasonable and just.

Dated: February 10, 2022                    Respectfully submitted,

                                            By: */s/ Jonas Jacobson*
                                            Jonas B. Jacobson (Cal. Bar No. 269912)
                                            jonas@dovel.com
                                            Simon Franzini (Cal. Bar No. 287631)
                                            simon@dovel.com
                                            Alex Van Dyke (Cal. Bar No. 340379)
                                            alex@dovel.com
                                            DOVEL & LUNER, LLP
                                            201 Santa Monica Blvd., Suite 600
                                            Santa Monica, California 90401
                                            Telephone: (310) 656-7066
                                            Facsimile: (310) 656-7069

                                            *Counsel for Plaintiff*

COMPLAINT
Case No. 5:22-cv-00866

DocuSign Envelope ID: 1D8CA099-52AA-4CC7-854A-65C6A3D79279

1

2                            **UNITED STATES DISTRICT COURT**

3                           **NORTHERN DISTRICT OF CALIFORNIA**

4

5    DAVID OH, individually and on behalf of all
     others similarly situated,

6                                                        **CLRA VENUE DECLARATION**

7                        *Plaintiff,*

8                            v.

9    SUNVALLEYTEK INTERNATIONAL,
     INC.,

10

11                       *Defendant.*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLRA Venue Declaration

I, David Oh, declare as follows:

      1.      I submit this declaration based on pre-suit investigation conducted by my attorneys.

      2.      I understand that Cal. Civ. Code § 1780 states that a CLRA claim "may be commenced in the county in which the person against whom it is brought resides, has his or her principal place of business, or is doing business."

      3.      Based on my counsel's investigation, I understand that, according to Sunvalleytek's October 15, 2021 Statement of Information filed with the California Secretary of State, its principal office is at 160 E Tasman Dr. Suite 215, San Jose, California 95134.

      4.      I understand that San Jose (the location of Sunvalleytek's headquarters) is within Santa Clara County, which is within the Northern District of California.[1]

      5.      I understand that, because Sunvalleytek's headquarters is in the Northern District of California, this is a proper place for my CLRA claim.

      I declare under penalty of perjury, under the laws of the United States and the State of California, that the foregoing is true and correct to the best of my knowledge.

Signature: _____

      David Oh

Date:    2/10/2022
     _____

---

[1] https://home.sccgov.org/about-county; https://cand.uscourts.gov/about/jurisdiction-map/

1

CLRA Venue Declaration